1   SEAN TAMURA-SATO (Cal. SBN 254092)
    seant@minamitamaki.com
2   LISA P. MAK (Cal. SBN 260281)
    lmak@minamitamaki.com
3   **MINAMI TAMAKI LLP**
    360 Post Street, 8th Floor
4   San Francisco, CA 94108
    Tel. (415) 788-9000
5   Fax (415) 398-3887

6   GINA SZETO-WONG (Cal. SBN 284883)
    gina@szetowonglaw.com
7   **SZETO-WONG LAW, PC**
    1300 Clay Street, Suite 600
8   Oakland, CA 94612-1427
    Tel. (415) 264-1063
9   Fax (415) 869-5392

10  *Attorneys for Plaintiff Rouble P. Claire*

11

12              **UNITED STATES DISTRICT COURT**

13              **EASTERN DISTRICT OF CALIFORNIA**

14  ROUBLE P. CLAIRE, an individual,        | CASE NO.

15                          Plaintiff,       | **COMPLAINT FOR DAMAGES;**
                                             | **DEMAND FOR JURY TRIAL**
16          vs.

17  COUNTY OF SUTTER; EARL MANION,   | 1.  Violation of Equal Protection
    in his individual capacity; VISHAAL VIRK, |     (42 U.S.C. section 1983)
18  in his individual capacity; SARA M.
    HOLLIS; JANE DOE; and DOES 2-20, | 2.  Conspiracy to Violate Civil Rights
19  inclusive,                        |     (42 U.S.C. section 1985)

20                          Defendants.      | 3.  Municipal Liability for Unconstitutional
                                             |     Policy, Custom, or Practice
21                                           |     (42 U.S.C. section 1983)

22                                           | 4.  Violation of Ralph Civil Rights Act
                                             |     (California Civil Code section 51.7)
23
                                             | 5.  Violation of Tom Bane Civil Rights Act
24                                           |     (California Civil Code section 52.1)

25                                           | 6.  Assault

26                                           | 7.  Trespass

27                                           | 8.  Intentional Infliction of Emotional
                                             |     Distress
28

- 1 -
**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

**COMPLAINT AND DEMAND FOR JURY TRIAL**

1.    Plaintiff ROUBLE P. CLAIRE brings this Complaint against the COUNTY OF SUTTER, EARL MANION, VISHAAL VIRK, SARA M. HOLLIS, JANE DOE, AND DOES 2 - 20 (hereinafter together, "Defendants").    Plaintiff makes the following allegations upon personal knowledge as to Plaintiff's own acts, and upon information and belief and the investigation of Plaintiff's attorneys as to all other matters, and alleges as follows:

**JURISDICTION AND VENUE**

2.    This Court has subject matter jurisdiction over the claims in this Complaint per 28 U.S.C. section 1331 (federal question), 28 U.S.C. section 1343 (civil rights), and 28 U.S.C. section 1367.

3.    This action arises under the United States Constitution, as applied to state and/or local authorities through 42 U.S.C. section 1983.

4.    Venue is proper in this Court under 28 U.S.C. section 1391.  Defendants are residents of and/or are present in this District.   Additionally, the facts giving rise to this lawsuit occurred within this District.

**PARTIES**

5.    Plaintiff ROUBLE P. CLAIRE (hereinafter "Plaintiff" or "Mr. Claire") is a 66-year-old man of South Asian descent.  Plaintiff was at all times relevant a resident of Sutter, California.

6.    Defendant SARA M. HOLLIS (hereinafter "Defendant Hollis" or "Ms. Hollis") is a female of Caucasian descent, sued herein for damages in her individual and personal capacity.

7.    Defendant JANE DOE, on information and belief, is a female of Caucasian descent, sued herein for damages in her individual and personal capacity.   The true name and identity of Defendant JANE DOE is presently unknown to Plaintiff, despite diligent inquiry and investigation.  Plaintiff will seek to amend this Complaint as soon as Plaintiff ascertains Defendant JANE DOE's true name and identity.

8.    Defendant COUNTY OF SUTTER (hereinafter "Defendant County") is a public entity, duly organized and existing under the laws of the State of California.   Under its authority, Defendant County operates and manages the Sutter County Sheriff's Office and the Yuba City Police Department

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

(hereinafter together, "Sutter County law enforcement") and is and was at all relevant times mentioned herein responsible for the actions and/or inactions and the policies, procedures, and practices/customs of the Sheriff's Office and each entity's respective employees and/or agents.

9.    Defendant EARL MANION (hereinafter "Defendant Manion" or "Deputy Manion") is, and at all relevant times herein was, a law enforcement officer employed with and by the Sutter County Sheriff's Office (hereinafter "Sheriff's Office"). On information and belief, Defendant Manion is of Caucasian descent. At all relevant times mentioned herein, Defendant Manion was the agent, employee, or representative of the Sheriff's Office and in such capacity acted under the authority and color of the laws, statutes, ordinances, regulations, customs, and usages of the State of California, County of Sutter, and Sheriff's Office and pursuant to the official policy of Defendant County. Defendant Manion is being sued in his individual capacity.

10.    Defendant VISHAAL VIRK (hereinafter "Defendant Virk" or "Deputy Virk") is, and at all relevant times herein was, a law enforcement officer employed with and by the Sheriff's Office. On information and belief, Defendant Virk is of South Asian descent. At all relevant times mentioned herein, Defendant Virk was the agent, employee, or representative of the Sheriff's Office and in such capacity acted under the authority and color of the laws, statutes, ordinances, regulations, customs, and usages of the State of California, County of Sutter, and Sheriff's Office and pursuant to the official policy of Defendant County. Defendant Virk is being sued in his individual capacity.

11.    At all relevant times, Defendants Manion and Virk were acting as agents and/or co-conspirators of one another and acting under color of law.

12.    The true names of the identities of Defendants DOES 2 - 5 (hereinafter "DOES 2 – 5") are presently unknown to Plaintiff. On information and belief, at the time of the conduct alleged herein, DOES 2 - 5 are and/or were friends, family members, associates, acquaintances, co-workers, and/or agents of Defendants Hollis and/or JANE DOE. Plaintiff alleges that DOES 2 - 5 acted to aid, incite, and conspire with Defendants Hollis and/or JANE DOE to deny Mr. Claire his civil rights and rights under California state law, and/or enabled or ordered other defendants to engage in such conduct. Plaintiff will seek to amend this Complaint as soon as Plaintiff ascertains the true names and identities of DOES 2 - 5.

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

13.     The true names of the identities of Defendants DOES 6 - 20 (hereinafter "DOES 6 – 20") are presently unknown to Plaintiff, despite diligent inquiry and investigation.  On information and belief, at the time of the conduct alleged herein, DOES 6 - 20 were the officers, managers, agents, and/or employees of Defendant County and/or the Sheriff's Office and/or DOES 6 - 20 were acting with the permission and consent of Defendant County and/or the Sheriff's Department.  Plaintiff alleges that DOES 6 - 20 were acting within the course and scope of said agency and/or employment, at all times mentioned herein.  Plaintiff further alleges that DOES 6 -20 violated Mr. Claire's civil rights and rights under California state law, and/or enabled or ordered other defendants to engage in such conduct.  DOES 6 -20 are being sued in their individual capacities.  Plaintiff will seek to amend this Complaint as soon as Plaintiff ascertains the true names and identities of DOES 6 - 20.

## FACTUAL BACKGROUND

14.     Plaintiff Rouble P. Claire is a 66-year-old male of South Asian descent and a member of the Sikh faith.

15.     In 1973, Mr. Claire moved from India to Sutter, California with his parents when he was 17 years old.

16.     Mr. Claire received an associate's degree from Yuba College in or around 1981.

17.     Mr. Claire also obtained a bachelor's degree in Electrical Engineering from Sacramento State University in or around 1997.

18.     After graduating from Sacramento State University, Mr. Claire moved to the San Francisco Bay Area and worked in manufacturing and design for companies located there.

19.     Mr. Claire moved back to Sutter in August 2019 to help take care of his aging mother after his father passed away.

***On May 11, 2021, Defendant Hollis assaulted Mr. Claire and Defendant JANE DOE vandalized Mr. Claire's Home with Racial Epithets***

20.     Between 10:00 and 11:00 a.m. on May 11, 2021, Mr. Claire left his home on Maple Street in Sutter, California and drove to the South Butte Market.

21.     Mr. Claire withdrew money from an ATM machine at the South Butte Market and made a purchase in the store.

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

22.     Mr. Claire walked out of the South Butte Market toward his car in the South Butte Market parking lot.

23.     Defendant Hollis was sitting in her car parked on the driver's side of Mr. Claire's car with a window rolled down.

24.     As Mr. Claire approached the driver's side door of his car, Defendant Hollis shouted "Hindu motherfucker" at him.

25.     Mr. Claire looked toward Defendant Hollis, and she yelled words to the effect of, "Hey, did you fucking drive on Maple Street?"

26.     Mr. Claire responded by saying words to the effect of, "I not only drove on Maple Street, I live on Maple Street."

27.     Defendant Hollis accused Mr. Claire of hitting and killing her dog with his car.

28.     Mr. Claire responded that he did not hit or kill Defendant Hollis' dog and that it was possible someone else hit it if it was not on a leash.

29.     Defendant Hollis said she had a video of the alleged incident, but refused to show it to Mr. Claire.

30.     Mr. Claire is unaware of ever having met Defendant Hollis prior to this encounter.

31.     Mr. Claire was extremely confused as to who Defendant Hollis was and why she was angry with him.

32.     Defendant Hollis continued to behave aggressively towards Mr. Claire, cursing at him and calling him "motherfucker," "asshole," and "fucking Hindu."  Mr. Claire reasonably felt that Defendant Hollis was using these terms to harass him based on his race, ethnicity, creed, national origin, and/or skin color.

33.     In an attempt to calm the situation, Mr. Claire repeatedly told Defendant Hollis that he did not hit her dog.

34.     However, Defendant Hollis both verbally and physically threatened Mr. Claire, saying words to the effect of, "I'm gonna ram you."

35.     Defendant Hollis then backed her car up and drove towards Mr. Claire at a rapid speed.

36.     Defendant Hollis put Mr. Claire in apprehension of being hit by her vehicle and caused

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

1   him to move toward the front of his car to avoid being struck.

2       37.     As Defendant Hollis drove close to Mr. Claire, she took a sudden turn, just missing Mr.

3   Claire.  Defendant Hollis slammed on her brakes, and parked behind and perpendicular to Mr. Claire's

4   car.

5       38.     Mr. Claire's car was thus blocked from being able to leave the parking lot.

6       39.     Fearing what Defendant Hollis might do next, Mr. Claire ran back into the South Butte

7   Market.

8       40.     Inside the South Butte Market, one of the store's employees, Anita Pedigo (hereinafter

9   "Ms. Pedigo"), stated to Mr. Claire that she had seen Defendant Hollis driving towards Mr. Claire.

10      41.     On information and belief, Ms. Pedigo was able to identify Defendant Hollis on May

11  11, 2021, because Defendant Hollis was previously Ms. Pedigo's employee and/or subordinate.

12      42.     Mr. Claire asked Ms. Pedigo to call the police, as he did not have his cellular phone

13  with him.

14      43.     Ms. Pedigo called and spoke with someone at dispatch.

15      44.     Ms. Pedigo then handed the telephone to Mr. Claire, who explained what had

16  happened, including that an individual called him a "fucking Hindu" and tried to "ram" him with her

17  vehicle.

18      45.     The dispatch officer advised Mr. Claire that someone from the Sheriff's Office would

19  be dispatched to the South Butte Market.

20      46.     While Mr. Claire was speaking on the telephone, Defendant Hollis drove out of the

21  parking lot.

22      47.     Mr. Claire also observed a black Nissan sedan leave the store's parking lot at the same

23  time as Defendant Hollis.

24      48.     Mr. Claire then saw Defendant Hollis and the driver in the black Nissan sedan appear

25  to engage in a conversation at a nearby stop sign at the intersection of South Butte Road and Acacia

26  Avenue.

27      49.     Defendant Hollis and the driver of the black Nissan sedan then drove away on South

28  Butte Road toward Maple Street.

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

- 6 -
**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

50.    Mr. Claire waited at the South Butte Market for over thirty minutes, but no one from the Sheriff's Office showed up.

51.    Following the incident at South Butte Market, Mr. Claire drove home slowly on Maple Street to see if there was any sign of a dog having been hit.

52.    Mr. Claire did not see any indication that an animal had been hit on Maple Street or in the vicinity of his home.

53.    However, Mr. Claire did see the car that Defendant Hollis had been driving, as well as the black Nissan sedan parked near each other on Maple Street.

54.    Mr. Claire has since learned that both Defendant Hollis and her mother live near his home.

55.    Mr. Claire arrived home from the South Butte Market around 11:30 a.m., parked his car in his driveway, and went into his house.

56.    Sometime between 1:00 and 2:00 p.m., while looking outside his kitchen window, Mr. Claire saw Defendant JANE DOE walking past his house.

57.    Defendant JANE DOE walked to a stop sign near Mr. Claire's house, and then turned around and walked back towards Mr. Claire's home.

58.    As Defendant JANE DOE walked towards Mr. Claire's home, she knocked Mr. Claire's garbage cans over.

59.    Defendant JANE DOE stopped in front of Mr. Claire's home and then wrote in white or light-colored chalk the words "SAND NIGGER" and an arrow pointing to Mr. Claire's house on the street.

///
///
///
///
///
///
///

MINAMI TAMAKI, LLP
360 Post Street, 8ᵗʰ Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

60.    Immediately after writing the words "SAND NIGGER," Defendant JANE DOE knocked Mr. Claire's garbage cans over again, then traced over the words "SAND NIGGER" in colored chalk:





61.    "SAND NIGGER" is a racist slur that denigrates people of, or who appear to be of, Middle Eastern descent.

62.    Defendant JANE DOE then walked onto Mr. Claire's property and wrote in chalk on

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

his driveway the words "SAND NIGGER."

63.     Defendant JANE DOE then approached Mr. Claire, who was just outside his house, called him "Nigger," and knocked Mr. Claire's trash bins over.

64.     Defendant JANE DOE then left Mr. Claire's property and walked towards Defendant Hollis' home.

65.     On information and belief, at some time before Defendant JANE DOE trespassed upon Mr. Claire's property, Defendants JANE DOE and Defendant Hollis communicated with one another and agreed to terrorize, harass, assault, or harm Mr. Claire and/or his property on May 11, 2021.

66.     Fearing for his safety and the safety of his 92-year-old mother who lives with him, Mr. Claire immediately called 911.

67.     The 911 operator told Mr. Claire that an officer would be dispatched to his home.

68.     Before an officer arrived, Mr. Claire saw the same black Nissan sedan he had observed earlier driving back and forth several times in front of his home.

69.     During one of these trips, Mr. Claire observed a male in the passenger seat reach out of the front passenger side window and dump water from a water bottle on the street in what appeared to be an attempt to wash away the words "SAND NIGGER" that had been written there.

**The Sheriff's Office Failed to Adequately Investigate Mr. Claire's Claims**

70.     Approximately 20-30 minutes after he called 911, Deputy Manion arrived at Mr. Claire's home.

71.     In addition to telling Deputy Manion what had just happened, Mr. Claire described what had occurred earlier that day at the South Butte Market.

72.     Deputy Manion was not paying attention to Mr. Claire as Mr. Claire explained to Deputy Manion what happened to him that day.  Deputy Manion appeared disinterested and did not take any notes.

73.     While Mr. Claire spoke with Deputy Manion, the black Nissan sedan drove past Mr. Claire's home again.

74.     Deputy Manion asked if that was the same car Mr. Claire had seen at the South Butte Market earlier in the day.  Mr. Claire answered in the affirmative.

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

75.    Deputy Manion then followed the car from Mr. Claire's home to the nearby home of Defendant Hollis' mother, Robbin Hollis (hereinafter "Robbin").

76.    On information and belief, Deputy Manion met with Defendant Hollis at Robbin's home.

77.    On information and belief, Defendant Hollis informed Deputy Manion that her friend had written "SAND NIGGER" on Mr. Claire's driveway and on the street in front of his house.

78.    Defendant Hollis refused to provide her friend's name to Deputy Manion.

79.    On information and belief, Deputy Vishaal Virk met Deputy Manion at Robbin's home.

80.    Shortly thereafter, Deputy Virk arrived at Mr. Claire's home.  Mr. Claire explained the two incidents to Deputy Virk.

81.    Deputy Virk went back to Defendant Hollis's home, and then returned to speak with Mr. Claire again.

82.    During this second conversation, Deputy Virk advised Mr. Claire that "they" said they did not know who wrote the words "SAND NIGGER" on Mr. Claire's driveway.

83.    Deputy Virk did not provide the names of the individuals Deputy Manion had spoken to, but Mr. Claire was able to see from his house that the officers had been at both Defendant Hollis' home and Robbin's home.

84.    Mr. Claire asked Deputy Virk to speak with Ms. Pedigo about what had happened earlier at the South Butte Market.

85.    Eventually, Deputy Virk asked Mr. Claire if he would like to file a hate crime report. Mr. Claire said yes.

86.    Deputy Virk advised that the Sheriff's Office would patrol the street more frequently, and shared his contact information with Mr. Claire.

///

///

///

///

**MINAMI TAMAKI, LLP**
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

- 10 -
**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

87. Before leaving Mr. Claire's home, Deputy Virk poured water over the word "NIGGER" written on Mr. Claire's driveway:



88. Neither Deputy Virk nor anyone else from the Sheriff's Office had photographed the chalking "SAND NIGGER" or otherwise preserved or documented these racial epithets in front of Mr. Claire's home and his driveway.

89. At the time of the incidents of May 11, 2021, Plaintiff was 65 years old.

90. After seeing the chalking in front of Mr. Claire's home and on his driveway, and after speaking to Mr. Claire and individual(s) at Sara Hollis' home and her mother's home, there was probable cause to believe that Defendant Hollis had engaged in a hate crime and assaulted Mr. Claire.

91. However, the Sheriff's Office failed to further investigate or report the incidents of May 11, 2021.

92. Plaintiff is informed and believes, and on that basis alleges, that at some point on May 11, 2021, Deputy Manion, Deputy Virk, and DOES 6-20 (hereinafter together, "Deputy Defendants") formed a conspiracy to obstruct justice and prevent the prosecution of Defendants Hollis and JANE DOE.

93. Plaintiff is informed and believes, and on that basis alleges, Deputy Defendants communicated with one another before and/or after their respective visits to Mr. Claire's home.

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887

- 11 -

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

94.     Plaintiff is informed and believes, and on that basis alleges, as a result of these conversations, Deputy Defendants came to an agreement not to investigate or report the allegations against Defendants Hollis or JANE DOE, based upon Mr. Claire's race, ethnicity, and/or status as a hate crime victim.

95.     Plaintiff is informed and believes, and on that basis alleges, the Sheriff's Office and the Deputy Defendants acted in concert in failing to recommend charges for Defendants Hollis and JANE DOE.

96.     As a result of the aforementioned acts, the Sheriff's Office and the Deputy Defendants intentionally treated Mr. Claire differently from others similarly situated without any rational basis.

97.     The actions of the Sheriff's Office and the Deputy Defendants demonstrate the selective enforcement of the laws of Sutter County and the state of California through its practices, procedures, regulations and/or customs.

98.     Defendant County, through the Sheriff's Office, selectively enforces those laws, policies, and procedures that relate to hate crime laws and the investigation thereof, based upon race, ethnicity, national origin, and/or status as a hate crime victim or otherwise without rational basis.

99.     Mr. Claire heard nothing further from the Sheriff's Office after May 11, 2021, for months.

100.    On information and belief, Defendant Hollis had previously been arrested in Sutter, California before May 11, 2021.

101.    On May 7, 2019, Defendant Hollis was arrested by the Yuba City Police Department on suspicion of corporal injury to a spouse or cohabitant.

102.    On December 17, 2021, Defendant Hollis was arrested for Driving Under the Influence by the Marysville Police Department.

***The Sheriff's Office Did Not Act until the Appeal Democrat Newspaper Contacted Them***

103.    On or about September 17, 2021, Mr. Claire spoke with a journalist from the Appeal Democrat newspaper to discuss the incidents of May 11, 2021, and the lack of action taken by the Sheriff's Office.

104.    On information and belief, a journalist from the Appeal Democrat contacted the

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

Sheriff's Office for comment regarding the incidents of May 11, 2021, and the lack of action taken by the Sheriff's Office.

105.    On or about September 21, 2021, just days after the Appeal Democrat contacted the Sheriff's Office for comment, the Sheriff's Office finally followed up with Mr. Claire regarding the incidents of May 11, 2021.

106.    On information and belief, the Sheriff's Office followed up with Mr. Claire in September 2021, because Appeal Democrat contacted the Sheriff's Office regarding the incidents of May 11, 2021.

107.    Sutter County Sheriff deputies (hereinafter "Deputies") Manion, Virk, and Basi came to Mr. Claire's home unannounced on or about September 21, 2021.

108.    Deputies Manion, Virk, and Basi asked Mr. Claire to explain the incidents once again. Mr. Claire again described what had happened at both the South Butte Market and his home on May 11, 2021, and also explained that someone had knocked over his trash cans on May 17, 2021.

109.    Mr. Claire further complained that no action had been taken by the Sheriff's Office and that he continued to feel harassed.

110.    When Mr. Claire asked Deputy Virk why he did not arrest Defendant JANE DOE for trespass on May 11, 2021, Deputy Virk responded by saying words to the effect of, "You don't have a 'No Trespassing' sign on your property."

111.    Deputy Manion stated that he had admonished the individuals involved.  However, Deputy Manion did not provide any specific details about the conversation he had, with whom he had spoken, or how they responded.

112.    Deputy Manion also did not mention an incident or hate crime report being written, further investigatory steps, or communication with the Sutter County District Attorney's ("SCDA") Office regarding criminal charges.

113.    Mr. Claire expressed frustration with the seeming lack of interest in protecting him and his family from these types of biased, criminal acts.

114.    Deputy Basi assured Mr. Claire that information about his case would go to the SCDA's Office and asked that he share photographs of what had been written on his driveway and on the street.

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

- 13 -

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

115. On September 22, 2021, in accordance with this request, Mr. Claire emailed photographs of the chalked "SAND NIGGER" written on his driveway and on the street in front of his house to Deputy Manion and the Property and Evidence Technician, Anahi Duran Benites.

116. No one from the Sheriff's Office or SCDA's Office reached out to Mr. Claire after he sent these photographs.

117. Mr. Claire next contacted the Sheriff's Office on October 15, 2021. He asked to speak with a sergeant and was told someone would return his call.

118. Sergeant Green (hereinafter "Sgt. Green") called Mr. Claire around 2:00 p.m. on October 15 and said that he would follow up on the case and make sure a report was written.

119. Sgt. Green and Mr. Claire agreed that Mr. Claire would go to the Yuba City Sheriff's Office at 11:30 a.m. the next day, when Sgt. Green would be able to collect the report.

120. Mr. Claire arrived at the Yuba City Sheriff's Office at 11:30 a.m. on October 16, 2021, as agreed, and waited about an hour before another officer, Sergeant Hylen (hereinafter "Sgt. Hylen"), greeted him in the lobby.

121. Sgt. Hylen advised that Sgt. Green was busy.

122. Mr. Claire inquired with Sgt. Hylen about the report, and Sgt. Hylen stated that he would make sure it got written.

123. Sgt. Hylen told Mr. Claire to come back to the office on Monday, October 18, 2021, when he would be shown a photo lineup and would be able to pick up the report.

124. Mr. Claire arrived at the Yuba City Sheriff's Office on October 18th and met with Deputies Manion and Pope in the lobby waiting area.

125. Deputies Manion and Pope informed Mr. Claire that the report was not complete, but that they had a photo lineup for him to review.

126. Given the length of time between the incidents and the review of these photographs, Mr. Claire was unable to positively identify an individual.

127. However, Mr. Claire reminded the Deputies that Ms. Pedigo could positively identify the woman who had accosted him at the South Butte Market.

128. Deputy Manion said that the case would be closed because Mr. Claire could not identify

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887

1   a suspect at that moment.

2       129.   Deputy Manion also advised that there were no suspects in the case.

3       130.   Mr. Claire responded by saying that the name of the woman who tried to hit his car at

4   the South Butte Market was named Sara.

5       131.   Deputy Manion informed Mr. Claire that he had met with Defendant Hollis and that she

6   had told him that her friend had written "SAND NIGGER" on Mr. Claire's driveway and on the street

7   in front of his house, and that Defendant Hollis refused to provide the friend's name.

8       132.   Deputy Manion said that he had admonished Defendant Hollis and advised her not to

9   go to Mr. Claire's home again.

10      133.   Deputy Manion did not address whether he questioned Defendant Hollis or her mother

11  about the incident at the South Butte Market or the photograph Mr. Claire provided of Defendant JANE

12  DOE.

13      134.   Deputy Manion also failed to disclose whether the Sheriff's Office was going to

14  investigate Defendant JANE DOE.

15      135.   Deputy Manion said that he would speak with Ms. Pedigo the next day.

16      136.   Shortly after this conversation, Deputy Manion left the waiting area, and Deputy Pope

17  returned.

18      137.   On information and belief, Deputy Pope is Deputy Manion's supervisor.

19      138.   Deputy Pope asked Mr. Claire why he had waited five months for information about his

20  case and a report.

21      139.   Mr. Claire responded that this question was on the Sheriff's Office to answer, to which

22  Deputy Pope agreed.

23      140.   Mr. Claire also reminded Deputy Pope that Defendant Hollis's actions could be

24  considered an assault with a deadly weapon as she threatened to ram him with her vehicle.

25      141.   Deputy Pope nodded his head in agreement and said words to the effect of, "yes, it is.

26  This is on me, they dropped the ball, I need to do a better job to make sure they're trained better."

27      142.   Deputy Pope would not provide any additional details, saying only that Deputy Basi

28  might be pursuing charges with the SCDA's Office and that the report would be ready soon.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

143.    Finally, Mr. Claire was able to pick up the report on October 20, 2021. The report states that it was completed on October 16, 2021.

144.    The October 16, 2021 report Mr. Claire received was merely a time log of the communications between Mr. Claire and the Sheriff's Office. There was no narration of the incidents that took place on May 11, 2021, no information about the conversations officers had with Mr. Claire or anyone else, and no information about the investigation or potential charges.

145.    On October 20, 2021, Mr. Claire spoke to a female sitting at the front desk (hereinafter "Civilian Employee") of the Sheriff's Office who is, or appeared to be, a racial minority.

146.    On that day, Mr. Claire explained to Civilian Employee what happened to him on May 11, 2021, and the subsequent lack of investigation by the Sheriff's Office.

147.    Mr. Claire asked Civilian Employee, "why did the investigation take so long, does this happen all the time?"

148.    Civilian Employee stated to Mr. Claire, "Wow. That shouldn't have happened."

149.    Mr. Claire responded, "One day, it may happen to you."

150.    Civilian Employee nodded her head in agreement and said, "Yes."

151.    In January 2022, Plaintiff received an updated report from the Sheriff's Office dated December 15, 2021. This updated report includes statements from Sheriff's Office Deputies regarding the events of May 11, 2021, and the Sheriff's Office's subsequent communications with Mr. Claire.

152.    In the December 15 report, Deputy Manion stated that Defendant JANE DOE had not committed vandalism because "sidewalk chalk washes away without causing damage."

153.    Deputy Manion further stated that he spoke to Defendant Hollis on May 11, 2021, and that Defendant Hollis accused Mr. Claire of running over her dog and "killer it (sic)." However, Deputy Manion and the Sheriff's Office took no action to investigate whether any dog purportedly owned by Defendant Hollis had actually been harmed.

154.    Deputy Manion stated that Defendant Hollis told him on May 11, 2021, that her friend wrote "SAND NIGGER" in front of Mr. Claire's residence. However, Deputy Manion and the Sheriff's Office took no action to identify this individual.

155.    Deputy Manion stated after May 11, 2021, he took no action on this matter until

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

speaking with Rouble Claire in September 2021.

156.    Deputy Manion falsely stated in the December 15 report that Mr. Claire had only requested that Defendant Hollis be "verbally admonished for trespassing on to his property." Mr. Claire had instead requested that charges be filed against Defendant Hollis for assault with a deadly weapon and for hate speech directed against him.

157.    Deputy Manion's statements indicate no further action was taken regarding Defendant Hollis driving her car at Mr. Claire or preventing him from leaving the South Butte Market parking lot by blocking his car after hurling racial epithets at him.

158.    The December 15 report contains a November 17, 2021 statement from Deputy Rhiley Harrison.

159.    Deputy Harrison stated that Deputy Kohler asked him to review the incidents of May 11, 2021, and pursue further leads.

160.    Deputy Harrison stated that he spoke to Ms. Pedigo, the cashier at the South Butte Market, as part of his review.

161.    Deputy Harrison stated that Ms. Pedigo stated that she believed that Defendant Hollis was trying to scare Mr. Claire by driving her car towards him.

162.    Deputy Harrison stated that Ms. Pedigo stated that Defendant Hollis stopped her car only one foot away from Mr. Claire's car when she drove towards him.

163.    Deputy Harrison stated that he recommended that Defendant Hollis be charged with assault with a deadly weapon.

164.    Deputy Harrison provided a supplemental narrative dated December 18, 2021, stating that he received a refusal to prosecute from the Sutter County District Attorney's office.

165.    Deputy Harrison stated that the District Attorney's office stated that it was declining to prosecute because of the lack of sufficient evidence and that the recommendation from the Sheriff's Office came six months after the incidents in question.

166.    Deputy Harrison stated that the District Attorney's office noted that Deputies spoke with Mr. Claire multiple times before November 2021, but that the Sheriff's Office had only reported that Mr. Claire stated that Defendant Hollis was erratic, angry, and accused Mr. Claire of hitting her

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887

dog.

167.    Thus, the Sheriff's Office failed to properly identify, respond, or report the crimes committed by Defendants Hollis and JANE DOE prior to November 2021.

168.    Specifically, the Sheriff's Office did not follow its own hate crime policy in dealing with the incidents of May 11, 2021.

169.    The hate crime policy of the Sheriff's Office that was in effect during the relevant period (hereinafter "Hate Crime Policy"), states in part that:

> Whenever any member of this Office receives a report of a suspected hate crime or other activity which reasonably appears to involve a potential hate crime, the following shall occur:
>
> a.    Deputy(s) will be promptly assigned to contact the victim, witness or reporting party to investigate the matter further as circumstances may dictate.
>
> b.    The supervisor shall be notified of the circumstances as soon as practical.
>
> c.    Once "in progress" aspects of any such situation have been stabilized (*e.g.* treatment of victims, apprehension of present suspects, etc.), the assigned deputy(s) will take all reasonable steps to preserve available evidence which may tend to establish that a hate crime was involved.
>
> d.    The assigned deputy(s) will interview available witnesses, victims and others to determine what circumstances, if any, indicate that the situation may involve a hate crime.
>
> e.    Depending on the situation, the supervisor may request additional assistance from detectives or other resources to further the investigation.
>
> f.    All reports will be clearly marked as "Hate Crimes" by marking the appropriate box on the report form. The report will be completed and submitted by the assigned deputy(s) before the end of shift unless approved by the supervisor to hold such report.
>
> g.    The assigned deputy(s) shall provide the victim(s) of any suspected hate crime with a brochure on hate crimes per California Penal Code Section 13873 (Such brochures will also be available to members of the general public upon request). The assigned deputy(s) should also make reasonable efforts to assist the victim(s) by providing available information on local assistance programs and organizations.

MINAMI TAMAKI, LLP
360 Post Street, 8ᵗʰ Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

h.  The assigned deputy(s) and supervisor shall take reasonable steps to ensure that any such situation does not escalate further.

170.    As set forth in detail in the preceding paragraphs, Deputy Defendants did not comply with any of the steps outlined in the Hate Crime Policy with respect to the incident that is the subject of this Complaint (hereinafter "Incident").

***Sheriff Barnes Acknowledged that Deputy Virk Did Not Follow Proper Protocols***

171.    In January 2022, the non-profit organization the Sikh Coalition, on behalf of Mr. Claire, contacted Sutter County City Attorney Deborah Micheli and Sutter County Sheriff Brandon Barnes (hereinafter "Sheriff Barnes") regarding the incidents of May 11, 2021, and the Sheriff's Office's failure to take action regarding these events.

172.    Sheriff Barnes stated to the Sikh Coalition that Deputy Virk did not follow County law enforcement policies when he poured water on the word "NIGGER" that Defendant JANE DOE had written in chalk in the road in front of Mr. Claire's home.

173.    Sheriff Barnes stated to the Sikh Coalition that the Sheriff's Office has re-trained Deputy Virk on hate crime protocols after learning of Deputy Virk's failure to follow the policies of the Sheriff's Office.

174.    In the acts and omissions alleged above, the Deputy Defendants acted as the agent for and on behalf of the other Deputy Defendants, and at all times material, within the course and scope of their duties and in furtherance of the above-described conspiracy.

175.    The foregoing acts of the Deputy Defendants were taken under the color of law of the County of Sutter.

176.    In the acts and omissions alleged above, the Deputy Defendants attempted to impede, obstruct, or defeat the due course of justice with the intent to injure Plaintiff, and to deny Plaintiff the right of equal protection of laws within the meaning of 42 U.S.C. Section 1985(2) and (3).  Said actions were due to Plaintiff's race, ethnicity, national origin, and/or status as a hate crime victim, or otherwise without rational basis.

177.    The foregoing acts of Deputy Defendants were willful and malicious, taken in bad faith, and for oppressive reasons.

178.    Mr. Claire has been injured by the foregoing acts of Defendants, and has incurred

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

pecuniary and other losses, including severe emotional distress.

***The Sutter County Sheriff's Office Properly Investigates Assault Cases Where the Victim Is Not a Racial or Ethnic Minority, or the Victim of a Hate Crime***

179.    On information and belief, in the months preceding and following the Incident, the Sheriff's Office arrested dozens of individuals on suspicion of threatening to commit a crime, assault or suspicion of assault with a deadly weapon not a firearm, and/or vandalism.

180.    On information and belief, the Sheriff's Office took the allegations in the cases mentioned in the preceding paragraph seriously, conducted a minimally appropriate investigation into said complaints, and arrested the following individuals on suspicion of threatening to commit a crime, assault with a deadly weapon that was not a firearm, and/or vandalism:

(a)  On January 8, 2021, the Sheriff's Office arrested J.T. on suspicion of threatening to commit a crime and vandalism.

(b)  On January 13, 2021, the Sheriff's Office arrested K.B. on suspicion of threatening to commit a crime.

(c)  On February 10, 2021, the Sheriff's Office arrested M.S. on suspicion of threatening to commit a crime or cause great bodily injury.

(d)  On April 6, 2021, the Sheriff's Office arrested J.B. on suspicion of threatening to commit a crime.

(e)  On April 11, 2021, the Sheriff's Office arrested D.G. on suspicion of willfully threatening to commit a crime resulting in the death or great bodily injury to another person.

(f)  On June 8, 2021, the Sheriff's Office arrested R.Y. on suspicion of assault with a deadly weapon that was not a firearm.

(g)  On June 8, 2021, the Sheriff's Office arrested T.A. on suspicion of assault with a deadly weapon that was not a firearm and threatening to commit a crime.

(h)  On June 11, 2021, the Sheriff's Office arrested J.H. on suspicion of assault with a deadly weapon that was not a firearm.

181.    On information and belief, most of the victims in the cases mentioned in the previous paragraph were not racial or ethnic minorities, or victims of hate crimes.

///

MINAMI TAMAKI LLP
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

- 20 -

*The Yuba-Sutter Region*

182.    The U.S. Census Bureau refers to the region containing both Yuba and Sutter counties as the Yuba City Metropolitan Statistical Area because the region has close economic ties throughout the area.  *Id*.  The Yuba City Metropolitan Statistical Area is commonly referred to as the Yuba-Sutter region.

183.    The Yuba-Sutter region has several "Bi-County" agencies which provide economic and social services to residents of both Yuba and Sutter counties.  These agencies provide services in the following areas:

(a)  Health and Human Services;

(b)  Law Enforcement, including the Yuba-Sutter Gang and Narcotics Task Force or "Net-5" and the Yuba-Sutter California Highway Patrol;

(c)  Economic Development Activities, including the Yuba-Sutter Economic Development District and the Yuba-Sutter Business Consortium;

(d)  Tourism and Marketing, including the Yuba-Sutter Lodging Association; and

(e)  Arts and Culture, including the Yuba-Sutter Arts Council.

184.    The Yuba-Sutter population is: 46% Caucasian; 31% Latino; 13% Asian (including people of South Asian descent); and 3% Black.   *See* Yuba-Sutter Economic Development Corporation, *Yuba-Sutter Demographics*,  https://www.chooseyubasutter.com/demographics.html (last visited May 6, 2021).

185.    In the Yuba-Sutter region, 31.7% of the population speak a non-English language at home and 17.4% of the population were born outside of the United States.  *See* Census Reporter, *Sutter and Yuba Counties – Yuba City Public Use Metadata Area,* https://censusreporter.org/profiles/79500US0610100-sutter-yuba-counties-yuba-city-puma-ca/  (last visited May 6, 2021).

186.    The Yuba-Sutter region is also home to one of the largest Sikh populations in the country, with the highest concentration in Yuba City, Sutter County.  *See* Yuba City website, *Yuba*

MINAMI TAMAKI, LLP
360 Post Street, 8ᵗʰ Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

*City Profile*, https://www.yubacity.net/community/community/yuba_city_profile (last visited May 6, 2021).

### Hate Incidents on the rise in California and nation-wide

187.    Hate crimes against racial and religious minorities are on the rise both nationally and throughout California.

188.    According to FBI Hate Crime Statistics, hate crimes against racial minorities in the U.S. increased by nearly 32% from 2018 to 2020.

189.    Hate crimes against Sikhs in the U.S. tripled, from 2017 to 2018.  *See* South Asian Americans Leading Together*, FBI Releases 2018 Hate Crimes Report: Hate in the U.S. is Getting Deadlier*, (November 12, 2019), https://saalt.org/fbi-releases-2018-hate-crimes-report-hate-in-the-u-s-is-getting-deadlier/

190.    In California, the State Department of Justice recently reported that hate crimes against racial minorities in California increased nearly 50% from 2018 to 2020.

191.    In June 2021, State Attorney General Rob Bonta stated that hate crimes in California reached their highest reported level in a decade, hitting the 1,300 mark in 2020.

### Hate Incidents in the Yuba-Sutter Region

192.    On information and belief, the Yuba-Sutter region is commonly referred to as "Little Alabama" among racial minorities.

193.    The white supremacist prison gang, the Aryan Brotherhood, is based in the Yuba-Sutter region.  *See* Office of Attorney General, California Department of Justice, *White Supremacist Gang Members Arrested for Smuggling Heroin Secreted in the Glue Strips of Envelopes into Susanville State Prison* (February 14, 2011), https://oag.ca.gov/news/press-releases/white-supremacist-gang-members-arrested-smuggling-heroin-secreted-the-glue-strips.

194.    In December 2021, a group of teenagers in the Yuba-Sutter region posted a photograph of themselves on social media with swastikas and other white supremacy symbols painted on their chests.  *See* Michael McGough, *California High School Investigating After Photo Shows Shirtless Teens with Swastikas*, The Sacramento Bee (December 23, 2021),

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1  https://www.sacbee.com/news/local/education/article256743042.html.

2  195.  A few months later in January 2022, vandals defaced a mural in a Yuba-Sutter

3  pedestrian tunnel and covered the artwork with swastikas and the words, "KKK" which stands for

4  the Ku Klux Klan, a national white supremacy group.  *See* Laura Haefeli, *Marysville Mural*

5  *Vandalized with Swastikas, Other Hate Symbols*, CBS Sacramento (January 12, 2022),

6  https://sacramento.cbslocal.com/2022/01/12/maryville-mural-vandalized-hate-symbols/.

7  ***Violence Against Sikh-Americans in and around the Yuba-Sutter Region***

8  196.  Sikh men, in particular, have had to confront prejudice and violence in the U.S.,

9  especially after the September 11, 2001, attacks.  *See* Dawinder S. Sidhu, Neha Singh Gohil, *Civil*

10  *Rights in Wartime, the post-9/11 Sikh Experience*, (2013).

11  197.  Sikh men are often confused for Muslims because of the turban and long beard many

12  of them wear for religious reasons.  *Id.*  In fact, the first revenge killing in the U.S. after Sept. 11,

13  was against a Sikh man thought to be a Muslim.  *Id.*

14  198.  More than 20 years later, Sikhs still face similar problems, even in communities such

15  as Yuba City and Elk Grove, which are part of one of the biggest Sikh populations outside of

16  India.  *Id.*

17  199.  According to surveys by a coalition of Sikhs in the San Francisco Bay Area, 10% of

18  Sikh-Americans say they have experienced physical violence or property damage because of their

19  race or religion.

20  200.  In 2010, cab driver Harbhajan Singh was attacked by two men that left him bloodied

21  and beaten in West Sacramento, 40 miles from the Yuba-Sutter region.  The two men shouted racial

22  epithets at Mr. Singh, calling him "Osama Bin Laden" and accused him of being a Muslim.

23  201.  In 2011, two elderly Sikh men were gunned down in Elk Grove, fifty miles from the

24  Yuba-Sutter region. Community members believe that the two men were targeted because the two

25  grandfathers were wearing their traditional Sikh turbans when they were killed.

26  202.  In 2020, the day after a Sikh temple held its official grand opening in Orangevale, a

27  city 50 miles from the Yuba-Sutter region, someone spray-painted a swastika and the words "white

28  power" on its property.

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

- 23 -

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

*Underreporting of Hate Crimes in and around the Yuba-Sutter Region*

203.    Upon information and belief, hate crimes are underreported nationally.

204.    The Federal Bureau of Justice Statistics reports an average of 250,000 hate crimes every year in the U.S. which is 35 times more than what the FBI documented in 2018.

205.    Similarly, a 2018 California State Auditor's Report, titled "Hate Crimes in California," found that California law enforcement has not taken adequate action to identify, report, and respond to hate crimes.

206.    The report also found that California agencies did not properly identify some hate crimes, and underreported or misreported hate crimes.  *Id.*

207.    On information and belief, this statewide trend of inadequately responding to and investigating hate crimes is magnified in the Yuba-Sutter region.

208.    For example, on information and belief, in 2015, no hate crime charges were filed against John J. Cheso, a Yuba-Sutter man who allegedly said he was going to cut a bi-racial baby out of his estranged wife's stomach and hang the baby from a tree.

209.    On information and belief, in or around 2015, hate crime charges were not filed against Benjamin Rorie, a Yuba-Sutter man accused of using the N-word and hitting a black man with a pipe.

210.    In 2016, on information and belief, a teenager attacked and yelled a racial epithet at a 14-year-old black teenager in a park 26 miles from the Yuba-Sutter region.  A video of the incident shows a boy repeatedly punching a younger boy who is lying on the ground before walking away.  On information and belief, the District Attorney evaluating the incident stated that there was not enough evidence to file criminal charges of battery or a hate crime despite having a 10-second video of the incident.  On information and belief, no hate crime charges were filed against the suspect.

*Underreporting of Hate Crimes in Sutter County*

211.    Consistent with the statewide and Yuba-Sutter pattern of underreporting hate crimes, Sutter County law enforcement fails to properly report hate crimes in the county.

212.    On information and belief, this is true because the Sheriff's Office has a policy, practice, and custom of failing to properly identify, respond, and investigate hate crimes in the area.

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

213.    On information and belief, this custom and practice has persisted over the past two decades, and likely longer.

214.    In 2004, two people were arrested for spray painting a 20-foot swastika at a Sutter County high school to prevent black students from attending the school.  The Sutter County Sheriff's Office declined to charge the two individuals involved with a hate crime.  Jared O. Giampaoli (hereinafter "Mr. Giampaoli") was one of the suspects.

215.    In 2008, Sutter County law enforcement arrested Mr. Giampaoli for false imprisonment and grand theft after he and his associates beat two teenagers and drew swastikas on the teenagers' foreheads.  On information and belief, Mr. Giampaoli was not charged with a hate crime.

216.    In 2004, an individual spray-painted a swastika on the hood of a car belonging to a black woman in Yuba City.  Although reports indicated that the woman's son was recently involved in a racially charged altercation with a Caucasian "skinhead," the Sutter County Sheriff's officer assigned to the case stated that the Caucasian teenager "was definitely not a suspect," and did not provide any further details as to why the Sheriff's Office would not investigate that individual.

217.    In 2006, a Sikh priest with a traditional beard, a turban, and traditional clothing was brutally attacked with a chunk of concrete while on a walk near his home.  It was not a robbery and there was no other apparent motive.  On information and belief, before a hate crime investigation was conducted to determine whether the suspects harbored animus against racial minorities, Sutter County law enforcement officer, Lieutenant Buckland, stated, "there's no way we're putting this down as a hate crime."

218.    In 2008, in Sutter County, a group of Caucasian individuals stabbed and killed a black teenager while yelling, "get that Richmond Nigger."  On information and belief, Sutter County law enforcement did not charge any of the suspects with a hate crime.

219.    On information and belief, in 2010, a Sutter County black man was killed after two men who were not black pinned the victim underneath a car and dragged him for several blocks.  According to witness reports, the suspects called the victim the "N-word" during the incident.  The two suspects were not acquainted with the victim.  Sutter County law enforcement did

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

- 25 -

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

1  not charge the two suspects with a hate crime.

2      220.    Despite the statewide and national increase in hate crimes over the past several years,

3  from 2015 to 2020, Sutter County law enforcement referred 0% of hate crime complaints to the Sutter

4  County District Attorney's office for prosecution.  *See* Office of the Attorney General, California

5  Department of Justice, *Hate Crime in California Annual Reports (2015 - 2020)*,

6  https://openjustice.doj.ca.gov/resources/publications (last visited May 4, 2022).

7      221.    In the same period, San Francisco law enforcement referred 45% of hate crime

8  complaints to the San Francisco District Attorney's office.  *Id*.  Like Sutter County, racial minorities

9  comprise fifty-five percent of San Francisco's population.  *See* World Population Review, *San*

10  *Francisco Racial Demographics*,  https://worldpopulationreview.com/us-cities/san-francisco-ca-

11  population, (last visited May 8, 2021).

12      222.    New York City law enforcement referred 42% of hate crime complaints to the

13  Manhattan District Attorney's office for prosecution in 2021.  *See* New York City Police Department,

14  *Hate Crimes Reports: Complaints and Arrests Summary, Annual 2021*,

15  https://www1.nyc.gov/site/nypd/stats/reports-analysis/hate-crimes.page (last visited May 7, 2022).

16  New York City and Sutter County have a similar percentage of racial minorities.  *See* World

17  Population Review, *New York City Racial Demographics*, https://worldpopulationreview.com/us-

18  cities/san-francisco-ca-population, (last visited May 8, 2021).

19  

**CLAIMS FOR RELIEF**

20  **FIRST CLAIM FOR RELIEF**
**42 U.S.C. Section 1983**

21  **Denial of Equal Protection in Violation of the Fourteenth Amendment of the U.S. Constitution**
**(Against Defendants Manion, Virk, and DOES 6 - 20 in their individual capacities)**

22  

23      223.    Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

24      224.    42 U.S.C. Section 1983 provides that:

25      Every person, who under color of any statute, ordinance regulation,

26      custom or usage of any state or territory or the District of Columbia
    subjects or causes to be subjected any citizen of the United States or

27      other person within the jurisdiction thereof to the deprivation of any
    rights, privileges, or immunities secured by the Constitution and law

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

28

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

shall be liable to the party injured in an action at law, suit inequity, or other appropriate proceeding for redress …

225. Mr. Claire is a citizen of the United States.

226. This cause of action is pled against Defendants Virk and Manion and DOES 6 - 20 in their individual capacities.

227. All of the individual Defendants to this claim are persons potentially liable under Section 1983.

228. Mr. Claire is informed and believes and thereupon alleges that Deputy Defendants acted and/or purported to act herein under color of state law in their capacity as Sutter County Sheriff's Deputies.

229. At all times relevant herein, Mr. Claire had the clearly-established constitutional right under the Fourteenth Amendment to the United States Constitution to enjoy the equal protection of the laws, including but not limited to the full and equal benefit of police and law enforcement services provided by Sutter County. *See DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 n. 3 (1989) ("The State may not, of course, selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause."); *see also Elliot-Park v. Manglona*, 592 F.3d 1003, 1006–07 (9th Cir. 2010) ("a police officer can't investigate and arrest blacks but not whites, or Asians but not Hispanics. Police can't discriminate on the basis of the victim's race, either.").

230. Specifically, government officials acting under color of state law may not:

(a) selectively deny law enforcement services to disfavored minorities, or otherwise discriminate in the provision of such services on the basis of race, ethnicity, or status as a hate crime victim, regardless of whether such services may be characterized as "protective"; or

(b) discriminate on the basis of race, ethnicity, or status as a hate crime victim when investigating crimes or arresting criminal offenders.

231. At all times relevant herein, Deputy Defendants knew or should have known of these rights and liberties at the time of the complained conduct herein as they were clearly established at the time.

232. Deputy Defendants acted in concert and joint action with each other to deprive Mr.

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

Claire of the equal protection of the laws on the basis of Mr. Claire's race, ethnicity, national origin, and/or status as a hate crime victim when Deputy Defendants:

> (a) failed to respond to Mr. Claire's call from the South Butte Market which alleged facts that a hate crime had taken place;
>
> (b) failed to conduct a minimally adequate investigation into Mr. Claire's hate crime allegations against Defendants Hollis and JANE DOE;
>
> (c) destroyed available evidence which would have established that a hate crime had occurred; and
>
> (d) failed to comply with any of the provisions set forth in the Sheriff's Office's hate crimes policy in effect at that time.

233.    In addition, or in the alternative, by failing to investigate or arrest Defendants Hollis and JANE DOE and obstructing the subsequent investigation by destroying evidence of the crime, the Deputy Defendants caused Mr. Claire, as a "class of one," to be deprived of the equal protection of the laws, by intentionally treating him differently from others similarly situated, with no rational basis for the difference in treatment.

234.    On information and belief, during the relevant time period, Defendants Manion and Virk properly responded, investigated, and reported allegations of assault or suspicion of assault with a deadly weapon not a firearm, suspicion of threatening to commit a crime, and/or vandalism in cases where the victim was not a racial or ethnic minority, or the victim of a hate crime.

235.    On information and belief, in suspected assault and/or vandalism cases where the victim was not a racial or ethnic minority, or the victim of a hate crime, Defendant Virk did not destroy evidence that would have established that a crime had taken place.

236.    With respect to the conduct that is the subject of this Complaint, Deputy Defendants engaged in the acts and/or omissions willfully, maliciously, in bad faith, and in reckless disregard of Mr. Claire's federally protected rights.

237.    The acts and/or omissions of Deputy Defendants intentionally deprived Mr. Claire of his constitutional and statutory rights and were the moving forces behind Mr. Claire's injuries.

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

- 28 -

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

238.    At all times relevant, Deputy Defendants were acting pursuant to County custom, policy, and practices in their actions pertaining to Mr. Claire.

239.    As a proximate result of Deputy Defendants' unlawful conduct, Mr. Claire has suffered harm, severe emotional distress, economic loss, and other damages and losses as described herein, entitling him to compensatory and special damages in amounts to be determined at trial.

240.    Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. section 1988, pre-judgment interest, and costs as allowable by federal law.   There may also be special damages for lien interests.

241.    In addition to compensatory and special damages, Plaintiff is entitled to punitive damages against each of the individually named Deputy Defendants, in that the individual Defendants committed the aforementioned actions maliciously, willfully, and/or with a reckless or wanton disregard of Mr. Claire's constitutional and statutory rights.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. Section 1985**
**Conspiracy to Violate Plaintiff's Civil Rights in Violation of the U.S. Constitution**
**(Against Defendants Manion, Virk, and DOES 6 - 20 in their individual capacities)**

242.    Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

243.    This cause of action is pled against Defendants Virk and Manion and DOES 6 - 20 in their individual capacities.

244.    Deputy Defendants attempted to impede, obstruct, or defeat the due course of justice with the intent to injure Mr. Claire.

245.    As described more fully above, each of the Deputy Defendants conspired, directly or indirectly, for the purpose of depriving Mr. Claire of his rights to equal protection under the law.

246.    Said actions were due to Mr. Claire's race, ethnicity, and/or status as a hate crime victim and/or for no rational basis.

247.    In doing so, Deputy Defendants took actions or engaged in omissions in furtherance of this conspiracy.

248.    In furtherance of this conspiracy, each individual Deputy Defendant committed overt acts and was an otherwise willful participant in joint activity.

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

- 29 -

249.    The misconduct, acts and omissions complained of herein were undertaken with malice, willfulness, and reckless indifference to Mr. Claire's rights.

250.    The misconduct, acts, and omissions complained of herein were undertaken pursuant to the policy and practice of Defendant County and the Sheriff's Office in the manner described more fully in the preceding paragraphs and was tacitly ratified by policymakers for Defendant County with final policymaking authority.

251.    In so conspiring, the actions of the Deputy Defendants caused Mr. Claire to suffer injury and damages including emotional distress and economic harm, and he is therefore entitled to damages in an amount to be proven at trial.

252.    Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. section 1988, pre-judgment interest, and costs as allowable by federal law.  There may also be special damages for lien interests.

253.    In addition to compensatory and special damages, Mr. Claire is entitled to punitive damages against each of the individually named Deputy Defendants, in that the individual Defendants committed the aforementioned actions maliciously, willfully, and/or with a reckless or wanton disregard of Mr. Claire's constitutional and statutory rights.

### THIRD CLAIM FOR RELIEF
### 42 U.S.C. Section 1983
### Municipal Liability for Unconstitutional Practice or Custom
### (Against Defendant Sutter County)

254.    Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

255.    Municipal bodies are liable for constitutional violations under 42 U.S.C. section 1983 when execution of a policy or custom deprives an individual of his or her rights under the United States Constitution.

256.    At all times relevant herein, Defendant County was acting under the color of state law.

257.    At all times relevant herein, Plaintiff had the clearly-established rights to enjoy the equal protection and benefits of the law and equal privileges and immunities under the law and to be free from discrimination in law enforcement as guaranteed by the Fourteenth Amendment to the United States Constitution and other applicable federal law.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

258.     At all times relevant herein, Defendant County knew or should have known of these rights and liberties at the time of complained conduct herein as they were clearly established at the time.

259.     At all times relevant herein, Defendant County had a duty to ensure that County Sheriff law enforcement services were administered in a non-discriminatory manner.

260.     At all times relevant herein, Defendant County had a duty to ensure that County Sheriff personnel were adequately trained and supervised with respect to the County Sheriff's Office's hate crimes policy.

261.     Despite this duty, Defendant County maintains a policy, practice, custom, and habit whereby County Sheriff personnel are improperly and inadequately trained with respect to hate crime victims seeking protection and consistently fail to provide hate crime victims the rights they are entitled to based on the victims' race, ethnicity, national origin, and/or their status as a hate crime victim.

262.     Specifically, Defendant County: (1) developed and maintains a legally-deficient hate crimes policy that does not comply with state law requirements; and (2) failed to adequately train and/or supervise its deputies regarding the hate crimes policy that existed during the relevant time.

263.     In California, when a local law enforcement agency adopts or updates an existing hate crimes policy, pursuant to California Penal Code section 422.87(a), the policy **must** include the following:

| | |
|---|---|
| (1) | The definition of a hate crime; |
| (2) | The content of the model policy framework that the Commission on Peace Officer Standards and Training developed pursuant to Section 13519.6; |
| (3)(A) | Information regarding bias motivation; |
| (3)(C)(i) | A requirement that officers consider whether there is any indication that the perpetrator was motivated by hostility or other bias, in suspected disability-bias hate crimes; |
| (3)(C)(ii) | A requirement that officers consider whether there is any indication that the perpetrator perceived the victim to be vulnerable, in suspected disability-bias hate crimes; |

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

(3)(D) A requirement that officers consider whether there were targeted attacks on, or biased references to, symbols of importance to a particular religion, in suspected religion-bias hate crimes;

(4) Information regarding the general underreporting of hate crimes;

(5) A protocol for reporting suspected hate crimes to the Department of Justice pursuant to Section 13023;

(6) A checklist of first responder responsibilities, including, but not limited to effects of the crime on the victim, determining whether any additional resources are needed on the scene to assist the victim or whether to refer the victim to appropriate community and legal services, and giving the victims and any interested persons the agency's hate crimes brochure, as required by Section 422.92.

(7) A specific procedure for transmitting and periodically retransmitting the policy and any related orders to all officers;

(8) The title or titles of the officer or officers responsible for ensuring that the department has a hate crime brochure as required by Section 422.92 and ensuring that all officers are trained to distribute the brochure to all suspected hate crime victims and all interested persons; and

(9) A requirement that all officers be familiar with the policy and carry out the policy at all times.

264. On information and belief, the Hate Crimes Policy of the Sheriff's Office, did not and does not comply with the following sections of California Penal Code section 422.87(a): (2); (3)(A); (3)(C)(i); (3)(C)(ii); (3)(D); (4); (5); and (7).

265. As a result of Defendant County's failure to comply with eight out of the twelve mandatory sections of California Penal Code section 422.87(a), Sheriff's Office's Deputies did not receive proper training and supervision regarding how to adequately assist and protect hate crime victims, such as Mr. Claire.

266. The Defendant County's failure to develop and maintain a hate crimes policy that

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

complies with state law amounts to deliberate indifference to the constitutional rights of Mr. Claire and the public, was the moving force behind and proximately caused the violation of Mr. Claire's constitutional rights, and resulted from a conscious or deliberate choice to follow a course of action from among available alternatives.

267.    In addition, or in the alternative, Defendant County failed to adequately train and supervise its deputies and staff with respect to its deficient Hate Crimes Policy.

268.    On information and belief, the Hate Crimes Policy required its deputies to follow eight steps after the deputies receive a report of a suspected hate crime.

269.    None of the deputies or department personnel involved in the Incident complied with any of the steps set forth in the Hate Crimes Policy, demonstrating both Defendant County's failure to adequately train its deputies and other department employees with respect to its hate crimes policy and Defendant County's long-standing practice and custom of not prioritizing or adequately investigating hate crimes.

270.    Specifically, Defendants Manion and Virk demonstrated that they did not receive the proper training regarding the Hate Crime Policy when Deputy Defendants:

    (1)    failed to respond to Mr. Claire's calls for assistance after Mr. Claire notified dispatch that a woman drove her car at Mr. Claire and called him a "fucking Hindu," a violation of Hate Crimes Policy, Ch. 5, section 14(4)(1);

    (2)    destroyed available evidence which would have established that a hate crime had taken place (*i.e.*, when Defendant Virk poured water over the word "NIGGER" that Defendant JANE DOE had written on Mr. Claire's property), a violation of Hate Crimes Policy, Ch. 5, section 14(4)(3);

    (3)    failed to investigate the crimes committed against Mr. Claire in any meaningful way, including failing to interview available witnesses, a violation of Hate Crimes Policy, Ch. 5, section 14(4)(4);

    (4)    failed to write a report of the Incident at the time it occurred, on information and belief, a violation of Hate Crimes Policy, Ch. 5, section 14(4)(6) ;

MINAMI TAMAKI LLP
360 Post Street, 8ᵗʰ Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

- 33 -
COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

(5)    failed to notify their supervisors as soon as practical, on information and belief, a violation of Hate Crimes Policy, Ch. 5, section 14(4)(2);

(6)    failed to provide Mr. Claire with a brochure on hate crimes per California Penal Code section 13873;

(7)    failed to provide Mr. Claire information about his rights as a victim as required by Marsy's Law, Cal. Const. Art. 1, section 28(b); and

(8)    failed to take reasonable steps to ensure that the situation did not escalate further when they ignored Mr. Claire's call at the South Butte Market resulting in JANE DOE inscribing the racial epithet at Mr. Claire's home, a violation of Hate Crimes Policy, Ch. 5, section 14(4)(8).

271.    In addition, Defendants Virk and Manion failed to carry out their mandatory duties with respect to Mr. Claire as set out in California Penal Code sections: 240 (assault); 245(a)(1) (assault with a deadly weapon); 422.55 (hate crimes); 602 (trespass); and 368 (crimes against the elderly).

272.    As set forth in detail above, County Sheriff's Deputies have consistently failed to administer police services to racial or ethnic minorities, and/or victims of hate crimes in a non-discriminatory manner as required by California Law and the County Sheriff's Office's own policies.

273.    At all times relevant herein, Defendant County failed to properly train and/or supervise Sheriff's Deputies in the manner described above, creating an informal code of conduct in the Sheriff's Office in which deputies inadequately respond to, investigate, and/or report hate crimes.

274.    As a result of the County's deliberate indifference to the rights of hate crime victims and the widespread culture of administering police services in a discriminatory manner, Mr. Claire was denied equal protection as a racial and ethnic minority, and hate crime victim as a result of the above-described pattern and practice.

275.    This failure to train and supervise County Deputies was the moving force behind and proximately caused the violation of Plaintiff's constitutional rights as set forth herein and resulted from a conscious or deliberate choice to follow a course of action from among various available alternatives.

276.    As a proximate result of Defendant's unlawful conduct, Mr. Claire has suffered emotional injuries and other damages and losses entitling him to compensatory and special damages,

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

in amounts to be determined at trial.

277.    Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. section 1988, pre-judgment interest, and costs as allowable by federal law.  There may also be special damages for lien interests.

### FOURTH CLAIM FOR RELIEF
### California Civil Code section 51.7
### Violation of the Ralph Civil Rights Act
### (Against Defendants Hollis, JANE DOE, and DOES 2-5)

278.    Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

279.    This cause of action is pled against Defendants Hollis, JANE DOE, and DOES 2 – 5 (hereinafter together, "Civilian Defendants").

280.    California Civil Code section 51.7(a), the Ralph Civil Rights Act (hereinafter "Ralph Act"), provides that, "all persons within the jurisdiction of this state have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property" due to, among other things, their race, ethnicity, or religion.

281.    At all times relevant herein, Mr. Claire had the right to be free from violence or intimidation by threat of violence, committed against his person on account of his race, ethnicity, and/or religion.

282.    As alleged hereinabove, each Civilian Defendant intentionally committed violence and/or threatened violence and/or intimidation by threats of violence, against Mr. Claire and/or his property on account of his race, ethnicity, and/or religion.

283.    A reasonable person in Mr. Claire's position would have believed and been intimidated by Defendant Hollis driving straight at Mr. Claire at a high speed, Defendant Hollis threatening to "ram" Mr. Claire with her car, and Defendant Hollis screaming at Mr. Claire that he was a "fucking Hindu," as set forth above.

284.    A reasonable person in Mr. Claire's position would have been intimidated by Defendant JANE DOE's conduct when Defendant JANE DOE trespassed upon Mr. Claire's property, vandalized Mr. Claire's property with racial epithets, and called him a "Nigger," as set forth above.

285.    Each Civilian Defendant acted to aid, incite, and conspire with the other Civilian

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

- 35 -

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

Defendant to deny Mr. Claire his right to be free from violence, or intimidation by threat of violence, committed against his person and property.

286.    In so acting, each Civilian Defendant violated Mr. Claire's civil rights under the Ralph Act.

287.    Civilian Defendants' violation of Mr. Claire's rights as guaranteed by the Ralph Act entitles Mr. Claire to compensatory and punitive damages, civil penalties, and attorneys' fees, all of which are provided for in California Civil Code section 52 and are requested here.

288.    As a direct and proximate result of Civilian Defendants' unlawful conduct as alleged herein, Mr. Claire has suffered harm, including but not limited to, severe emotional and mental distress, humiliation, embarrassment, and anxiety.

289.    As a direct and proximate result of Civilian Defendants' unlawful conduct as alleged herein, Mr. Claire has suffered economic harm and other consequential damages including lost earnings, medical expenses from mental health providers and other health professionals, as well as other incidental expenses, in amounts to be proven at trial.

290.    The aforementioned conduct by Civilian Defendants was willful, wanton, and malicious.

291.    At all relevant times herein, each Civilian Defendant acted with conscious disregard of Mr. Claire's rights and feelings and with the knowledge of or with reckless disregard that her conduct was certain to cause Mr. Claire injury, fear, and/or humiliation.

292.    By virtue of the foregoing, Mr. Claire is entitled to recover punitive and exemplary damages from Civil Defendants in an amount to be determined at trial.

293.    Mr. Claire has incurred, and will continue to incur, attorneys' fees in the prosecution of this action and therefore requests such reasonable attorneys' fees and costs as set by the Court.

### FIFTH CLAIM FOR RELIEF
**California Civil Code section 52.1**
**Violation of the Tom Bane Civil Rights Act**
**(Against Defendants Hollis, JANE DOE, and DOES 2-5)**

294.    Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

295.    California Civil Code section 52.1, the Tom Bane Civil Rights Act (hereinafter "Bane

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

Act"), establishes that it is unlawful to interfere with the exercise or enjoyment of any rights under the Constitution and laws of this state and the United States by use or attempted use of threats, intimidation, or coercion.

296.    At all times relevant herein, Mr. Claire had and has the following clearly-established rights under the laws of the State of California:

> (1) The right to be free from assault as secured by California Penal Code section 240;
>
> (2) The right to be free from assault with a deadly weapon pursuant to California Penal Code section 245(a)(1);
>
> (3) The right to be free from bodily harm as secured by California Civil Code section 43;
>
> (4) The right to be free from injury of property and infringement upon rights pursuant to California Civil Code section 1708;
>
> (5) The right to be free from persons entering onto a landowner's property without the landowner's consent as secured by California Penal Code section 602;
>
> (6) The right to be from criminal acts motivated by racial or religious animus pursuant to California Penal Code sections 422.55, 422.6, 422.7, and 422.75; and
>
> (7) The right to be free from elder abuse as secured by California Penal Code section 368.

297.    In committing the acts complained of herein, the Civilian Defendants intentionally interfered with the exercise or enjoyment of Mr. Claire's rights guaranteed under California law, including but not limited to Mr. Claire's right of protection from assault, trespass, crimes motivated by racial or religious animus, and elder abuse, by use or attempted use of threats, intimidation, or coercion.

298.    As set forth hereinabove, each Civilian Defendant acted to aid, incite, or conspire with each other to deny Mr. Claire the rights secured to him under the laws of the State of California.

299.    In so acting, each Civilian Defendant violated Mr. Claire's civil rights.

300.    Civilian Defendants' violation of Mr. Claire's rights as guaranteed by the Bane Act entitles Mr. Claire to compensatory and punitive damages, civil penalties, and attorneys' fees, all of which are provided for in California Civil Code section 52 and are requested here.

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

301.   As a direct and proximate result of Civilian Defendants' unlawful conduct as alleged herein, Mr. Claire has suffered harm, including but not limited to, severe emotional and mental distress, humiliation, embarrassment, and anxiety.

302.   As a direct and proximate result of Civilian Defendants' unlawful conduct as alleged herein, Mr. Claire has suffered economic harm and other consequential damages including lost earnings, medical expenses from mental health providers and other health professionals, as well as other incidental expenses, in amounts to be proven at trial.

303.   The aforementioned conduct by Civilian Defendants was willful, wanton, and malicious.

304.   At all relevant times herein, each Civilian Defendant acted with conscious disregard of Mr. Claire's rights and feelings and with the knowledge of or with reckless disregard that her conduct was certain to cause Mr. Claire injury, fear, and/or humiliation.

305.   By virtue of the foregoing, Mr. Claire is entitled to recover punitive and exemplary damages from Civil Defendants in an amount to be determined at trial.

306.   Mr. Claire has incurred, and will continue to incur, attorneys' fees in the prosecution of this action and therefore requests such reasonable attorneys' fees and costs as set by the Court.

### SIXTH CLAIM FOR RELIEF
### Assault
### (Against Defendant Hollis)

307.   Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

308.   Defendant Hollis acted, intending to cause Mr. Claire apprehension of an imminent harmful and offensive contact.

309.   As a result of Defendant Hollis' acts, Mr. Claire was in fact, placed in great apprehension of imminent harmful and offensive contact.

310.   In performing the acts alleged herein, Defendant Hollis acted with the intent of making contact with Mr. Claire.

311.   At no time did Mr. Claire consent to any of the acts by Defendant Hollis as alleged herein.

312.   Defendant Hollis' conduct as described above, caused Mr. Claire to be apprehensive

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

- 38 -

that Defendant Hollis would subject him to further intentional invasions of his right to be free from offensive and harmful contact and demonstrated that at all times material herein, Defendant Hollis had a present ability to subject Mr. Claire to an intentional, offensive, and harmful touching.

313.   As a direct and proximate result of Defendant Hollis' unlawful conduct as alleged herein, Mr. Claire has suffered severe emotional distress, humiliation, embarrassment, mental distress, anxiety, and economic harm, in amounts according to proof at trial.

314.   The aforementioned conduct by Defendant Hollis was willful, wanton, and malicious.

315.   At all relevant times, Defendant Hollis acted with conscious disregard of Mr. Claire's rights and feelings.

316.   Defendant Hollis also acted with knowledge of or with reckless disregard for the fact that her conduct was certain to cause injury and/or humiliation to Mr. Claire.

317.   On information and belief, Defendant Hollis intended to cause fear, physical injury, and/or pain and suffering to Mr. Claire.

318.   By virtue of the foregoing, Mr. Claire is entitled to recover punitive and exemplary damages from Defendant Hollis according to proof at trial.

**SEVENTH CLAIM FOR RELIEF**
**Trespass**
**(Against Defendant JANE DOE)**

319.   Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

320.   Mr. Claire is, and at all times mentioned in this Complaint, the lawful occupant of the property located on Maple Street, Sutter, CA, that is the subject of this Complaint.

321.   As set forth above, Defendant JANE DOE willfully and intentionally trespassed upon Mr. Claire's property for the purpose of intimidating Mr. Claire and vandalizing his property.

322.   At all times relevant herein, Mr. Claire did not grant Defendant JANE DOE permission to enter his property.

323.   As a direct and legal result of the wrongful conduct of Defendant JANE DOE, Mr. Claire has suffered severe emotional distress, humiliation, embarrassment, mental distress, anxiety, and economic harm, in amounts according to proof at trial.

324.   The aforementioned conduct by Defendant JANE DOE was willful, wanton, and

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

malicious.

325.    At all relevant times, Defendant JANE DOE acted with conscious disregard of Mr. Claire's rights and feelings.

326.    Defendant JANE DOE also acted with knowledge of or with reckless disregard for the fact that her conduct was certain to cause injury and/or humiliation to Mr. Claire and/or his property.

327.    On information and belief, Defendant JANE DOE intended to cause fear and/or pain and suffering to Mr. Claire.

328.    By virtue of the foregoing, Mr. Claire is entitled to recover punitive and exemplary damages from Defendant JANE DOE according to proof at trial.

## EIGHTH CLAIM FOR RELIEF
### Intentional Infliction of Emotional Distress
### (Against Defendants Hollis, JANE DOE, DOES 2 - 5)

329.    Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

330.    As set forth in detail above, Defendant Hollis called Mr. Claire a "fucking Hindu" before telling Mr. Claire that she was "gonna ram" Mr. Claire with her car, then drove her vehicle at Mr. Claire at a high speed.

331.    Shortly after Defendant Hollis' assault on Mr. Claire, Defendant JANE DOE trespassed on Mr. Claire's property, wrote the words "SAND NIGGER" on Mr. Claire's driveway and on the street in front of his house, then approached Mr. Claire and called him a "Nigger."

332.    As set forth hereinabove, each Civilian Defendant conspired and/or aided and abetted the other to inflict injury, pain, and emotional distress to Mr. Claire.

333.    In committing the acts described herein, Civilian Defendants engaged in extreme and outrageous conduct that transcended the bounds of human decency.

334.    Civilian Defendants acted with wanton and reckless disregard for Mr. Claire's safety and with deliberate indifference to the certainty that Mr. Claire would suffer severe emotional distress.

335.    As a direct and proximate result of Civilian Defendants' actions, Mr. Claire has suffered and will continue to suffer severe mental anguish, humiliation, pain, severe emotional

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

- 40 -
COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

1  distress, and economic loss.

2      336.    The outrageous conduct of the Civilian Defendants described above was performed

3  with conscious disregard of Mr. Claire's rights and feelings.  As a result, Mr. Claire is entitled to

4  punitive and/or exemplary damages from Civilian Defendants in a sum according to proof at trial.

5  **PRAYER FOR RELIEF**

6      337.    Accordingly, Plaintiff respectfully prays for judgment against Defendants as follows:

7      a.    Compensatory and special damages according to proof;

8      b.    Punitive and exemplary damages according to proof against all individually

9      named Defendants;

10      c.    Statutory civil penalties pursuant to California Civil Code Section 52 for

11      violations of the Ralph and Bane Acts;

12      d.    Attorneys' fees associated with this action under 42 U.S.C. section 1988, the

13      Ralph Act, and the Bane Act;

14      e.    Costs of suit incurred in this action; and

15      f.    Such other and further relief as this Court may deem just and proper.

16  **DEMAND FOR JURY TRIAL**

17      Plaintiff demands a trial by jury.

18      Respectfully submitted,

19
20  Dated:  May 9, 2022    MINAMI TAMAKI LLP

21      By:    __/s/  Sean Tamura-Sato__
22      SEAN TAMURA-SATO

23
24  Dated:  May 9, 2022    SZETO-WONG LAW, PC

25
26      By:    __/s/ Gina Szeto-Wong as authorized on 5/9/22__
    GINA SZETO-WONG

27      *Attorneys for Plaintiff*

28

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**